IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| VEDANTI SYSTEMS LIMITED and<br>MAX SOUND CORPORATION,<br><br>　　　　　　　Plaintiffs,<br><br>　　v.<br><br>GOOGLE, INC., YOUTUBE, LLC, and<br>ON2 TECHNOLOGIES, INC.,<br><br>　　　　　　　Defendants. | C.A. No._____<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiffs Vedanti Systems Limited ("VSL") and Max Sound Corporation ("Max Sound") file this Complaint for patent infringement against Defendants Google, Inc. ("Google"), YouTube, LLC ("YouTube"), and On2 Technologies, Inc. ("On2") (collectively "Defendants") and allege as follows:

1.　　This case arises out of Defendants' willful infringement of United States Patent No. 7,974,339 and Defendants' incorporation of this patented technology into products made, used, sold, offered for sale, and/or imported, including, but not limited to, VP8, VP9, WebM, YouTube, Google Adsense, Google Play, Google TV, Chromebook, Google Drive, Google Chromecast, Google Play-per-view, Google Glasses, Google +, Google's Simplify, Google Maps and Google Earth.  In short, Defendants' infringement pervades virtually every website and product offered by Google and its Defendant subsidiaries.

2.     Despite Google's well-publicized Code of Conduct — "Don't be Evil" — which it explains is "about doing the right thing," "following the law," and "acting honorably," Google, in fact, has an established pattern of conduct which is the exact opposite of its claimed piety.

3.     Indeed, time and time again, Google has willfully infringed the patents and used the proprietary information of others without offering to compensate the owners of those patents and/or proprietary information.  This case is yet another of the many occasions on which Google has unlawfully taken, rather than developed for itself and/or paid for, valuable and proprietary technology that is core to the functioning of its many businesses and products.

## PARTIES

4.     Plaintiff Vedanti Systems Limited is a British company having its principal place of business at 43 Overstone Road London W6 0AD.

5.     Plaintiff Max Sound Corporation is a Delaware corporation having its principal place of business at 2902A Colorado Avenue, Santa Monica, California  90404.

6.     Google is a corporation organized under the laws of the State of Delaware, and has a principal place of business at 1600 Amphitheatre Parkway, Mountain View, California 94043 and/or is conducting business through an affiliate located at this address.  Google may be served through its registered agent for service of process, Corporation Trust Company, at Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware  19801.

7.     On information and belief, YouTube is a limited liability company organized under the laws of the State of Delaware, and headquartered in San Bruno, California.  YouTube is a wholly-owned subsidiary of Google.  YouTube is in the business of the sharing and display of user-generated and corporate media video.  Available content on YouTube includes video clips, TV clips, music videos, and other content such as video blogging, short original videos,

and educational videos. YouTube may be served through its registered agent for service of process, Corporation Trust Company, at Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

8. On information and belief, On2 is a corporation organized under the laws of the State of Delaware, and has a principal place of business in Clifton Park, New York. On2 is wholly-owned subsidiary of Google. On2, formerly known as The Duck Corporation, engaged in the business of developing video compression technologies known as codecs. In February 2010, Google acquired On2 for an estimated $124.6 million. On2 claims the authorship of a number of video codecs, including video codecs known as VP8 and VP9. On2 may be served through its registered agent for service of process, Corporation Service Company, at 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

## JURISDICTION AND VENUE

9. This civil action for patent infringement arises under the Patent Laws of the United States, 35 U.S.C. §§ 1, *et seq.* This Court has jurisdiction over the claims presented herein pursuant to 28 U.S.C. §§ 1331 and 1338(a).

10. Defendants make, import, use, sell, and/or offer for sale the Accused Instrumentalities (as defined below) within the United States, including this District, that infringe one or more claims of United States Patent No. 7,974,339 entitled "Optimized Data Transmission System and Method" (the "'339 Patent"). The '339 Patent was duly and legally issued by the United States Patent and Trademark Office on July 5, 2011. A true and correct copy of the '339 Patent is attached hereto as Exhibit 1.

11. The '339 Patent is referred to herein as the "Asserted Patent."

12. VSL is the owner by assignment of all rights, title, and interests in the Asserted Patent, and is entitled to sue for past and future infringement thereof.

13. Max Sound and VSL have agreed that Max Sound shall have the right to enforce VSL's patent rights on VSL's behalf.

14. A "codec" is a device or computer program capable of encoding or decoding a digital data stream or signal.

15. Defendants are engaged in the business of developing, using, and selling a variety of video computer programs, including those commonly referred to as the VP8, VP9, H.264, and WebM video codecs (collectively the "Accused Codec Instrumentalities").

16. Defendants embed these Accused Codec Instrumentalities into products that Defendants make, use, and sell, including in this District, such as the Android operating system used in many mobile phones and tablet computers (collectively "the Accused Android Instrumentalities").

17. Defendants use these Accused Codec Instrumentalities to deliver video content from Defendants' websites and products such as VP8, VP9, WebM, YouTube.com, Google Adsense, Google Play, Google TV, Chromebook, Google Drive, Google Chromecast, Google Play-per-view, Google Glasses, Google +, Google's Simplify, Google Maps and Google Earth (collectively the "Accused Website and Product Instrumentalities").

18. Defendants distribute software such as the Chrome web browser that implements the Accused Codec Instrumentalities (collectively the "Accused Software Instrumentalities").

19. Collectively, the Accused Codec Instrumentalities, the Accused Android Instrumentalities, the Accused Website and Product Instrumentalities, and the Accused Software Instrumentalities comprise the "Accused Instrumentalities."

4

20. On information and belief, Defendants directly and/or indirectly import, manufacture, use, offer for sale, and/or sell the Accused Instrumentalities within the United States, including this District, that infringe one or more claims of the Asserted Patent.

21. Venue is proper in this District pursuant to 28 U.S.C. § 1400(b).

## GENERAL ALLEGATIONS

### VSL and the '339 Patent

22. In 2001, Constance Nash, one of the two named inventors of the '339 Patent, had the goal of offering to the public an Internet subscription service to deliver digitized video of musical concerts via the Internet.

23. After reviewing and testing numerous video compression and decompression technologies for use with the subscription services, Ms. Nash concluded that none of the then-existing video compression technologies could provide the level of video quality necessary to launch the project.

24. The then-existing video standards resulted in jittery, low-quality video and sound for large-sized video files.

25. The available technologies relied solely on compression, *i.e.*, the encoding of digital information by reducing the number of bits in the representation, by identifying and deleting unnecessary bits ("lossy" compression).

26. Ms. Nash hired Alex Krichevsky to work for VSL. Together, Ms. Nash and Mr. Krichevsky developed the technology, specifically a video codec (the "VSL Codec"), and the inventions described in the '339 Patent.

27. The VSL Codec implemented a proprietary and unique system of optimizing data transmission using methods for key frame partitioning, slicing and analyzing pixel variation of

video content to significantly reduce the volume of digital video files, while minimizing any resulting loss of video quality.

28. Ms. Nash and Mr. Krichevsky filed United States and numerous other international patent applications that covered some of the methods and systems used in the VSL Codec.

29. Germane to this lawsuit, on January 16, 2002, Ms. Nash and Mr. Krichevsky filed the United States patent application that resulted in the issuance of the '339 patent.

### Google, H.264, and VP8

30. During the mid- to late-2000s, video compression and streaming technology had become integral to Google products, including but not limited to the YouTube.com website, the Chrome web browser, and the Android mobile device operating system.

31. Google and Google products began supporting a video codec known as H.264.

32. The first version of the H.264 codec was completed in 2003 by a standardization committee called the Joint Video Team, which was formed by the Video Coding Experts Group and the Moving Pictures Experts Group.

33. Since that time, H.264 has developed into a widely used codec with substantial penetration in the optical disc, broadcast, and streaming video markets.

34. MPEG LA, LLC ("MPEG LA"), a Colorado-based firm, licenses patent pools that cover essential patents necessary for use in various video codec standards. MPEG LA is not related to the Moving Pictures Experts Group.

35. MPEG LA was initially founded in the late 1990s by several international companies that owned patents necessary to practice the MPEG-2 video standard in order to pool

those patents under a single entity for purposes of granting pooled licenses to those patents and to generate patent royalties.

36. Since that time, MPEG LA has asserted that multiple video standards, including H.264, require a license to its pooled patents, and hundreds of companies have obtained licenses from MPEG LA for the rights to the H.264 patent pool.

37. For many years Google refused to obtain a license from MPEG LA to cover its implementations of the H.264 standard, despite multiple notices from MPEG LA that Google required a license.

38. Rather than obtaining a license from MPEG LA for Google's implementations of H.264, Google decided instead to seek alternatives to H.264 that would not require paying royalties to MPEG LA.

39. VP8 is a video compression standard released by Defendant On2 in September 2008.

40. As of September 2008, MPEG LA had not established a patent pool that covered the VP8 codec.

41. In August 2009, Google targeted VP8 as a potential alternative to H.264 and initiated negotiations to acquire On2.

42. In February 2010, Google completed the acquisition of On2.

43. Through its acquisition of On2, Google obtained ownership of the VP8 codec and On2's patents and pending patent applications covering the VP8 codec and possessed a potential alternative to avoid paying licensing royalties to MPEG LA.

44. In May 2010, Google announced that its new WebM video file format would incorporate the VP8 codec.

45. YouTube now uses WebM/VP8 video and has committed to encode its entire portfolio of videos to WebM.

46. WebM was enabled in Google Android operating system in late 2010.

47. After the release of WebM/VP8 by Google, however, numerous reviews by the public concluded that the video quality of WebM/VP8 was significantly weaker than the quality produced using H.264.

### Google's Discussions with VSL

48. In March 2010, with the understanding that WebM/VP8 was in desperate need of improvement, Alpesh Patel, VSL's CEO at that time, communicated with Google's Nikesh Arora to discuss licensing VSL's video technology and/or the possible acquisition of VSL and the '339 Patent by Google.

49. In April 2010, Mr. Patel and Megan Smith, Google's Vice President of New Business Development, executed a non-disclosure agreement ("NDA") for the purpose of engaging in negotiations regarding VSL's technology.

50. During those negotiations, Laura Majerus, one of Google's in-house counsel advised that if VSL's patent portfolio read on the H.264 video codec, then Google would seek to buy the technology or to acquire VSL.

51. During the course of the negotiations and pursuant to the NDA, VSL provided a working VSL codec to Google for testing and analysis, and further provided copies of VSL's patents, patent applications (including the patent application that led to the '339 Patent), and claim charts comparing the inventions claimed in the '339 Patent to the H.264 standard.

52. The parties continued to meet over the course of the next eight months. During the course of those meetings, Google requested, and VSL provided, technical guidance to Google

regarding the implementation of VSL's technology, the VSL Codec, and the inventions claimed in the '339 Patent.

53. By December 2010, negotiations between the parties stalled, and the parties terminated discussions.

54. On December 16, 2010, Ms. Majerus shipped back to VSL materials that VSL had provided to Google pursuant to the NDA. Ms. Majerus included a cover letter that provided an itemized list of documents and other things being returned to VSL pursuant to the NDA, with the only apparent missing components being the claim charts comparing the inventions claimed in the '339 Patent to the H.264 standard.

55. Included with the materials was a collection of Post-It notes, which appear to have been authored by Google personnel.

56. The Post-It notes included statements that suggest that Google intended to infringe VSL's patents and that Google's infringement was knowing and willful.

57. Examples of such statements in the Post-It notes include the following:

    a. Google engineers should be discouraged from "digging deep" and should "close eyes to existing IP," and from talking further to Qualcomm IP engineer Seyfullah Oguz who had agreed to assist VSL in providing understanding to Google ;

    b. Google was concerned that its infringement could be considered "recklessness" (the standard applicable to willful infringement);

    c. Google had concerns that products in development should be carefully monitored because of potential infringement;

    d. Google personnel should "try" to destroy incriminating emails;

    e. Google needed to obtain a non-infringement opinion from outside counsel;

9

  f. Google should evaluate the risk of getting sued for infringement if Google's infringing products were "money making"; and

  g. Google should consider a "design around" because it was facing a "risk of litigation."

58. On information and belief, Google began to incorporate VSL's patented technology into WebM/VP8 soon after it initiated negotiations with VSL and received from VSL confidential information regarding VSL's patent portfolio.

59. Indeed, subsequent to meeting with VSL, Google and On2 either amended a number of their pending patent applications to incorporate various claims of the '339 Patent or filed for new patents which incorporated various claims of the '339 Patent, without disclosing to the United States Patent and Trademark Office the '339 Patent or its underlying application as prior art or Ms. Nash or Mr. Krichevsky as prior inventors. Nonetheless, Defendants' incorporation of claims of the '339 Patent into their patent applications and patents constitute tacit admissions of Defendants' infringement of the '339 Patent.

## CLAIM FOR RELIEF
(Infringement of the '339 Patent)

60. VSL incorporates paragraphs 1 through 59 as though fully set forth herein.

61. Upon information and belief, Defendants have been and now are directly infringing one or more claims of the '339 Patent by making, importing, using (including use for testing purposes), offering for sale, and/or selling the patented inventions, including but not limited to the Accused Instrumentalities.

62. In addition and/or in the alternative, Defendants have been and/or now are indirectly infringing one or more claims of the Asserted Patent by inducing customers,

consumers, and end users to use the Accused Instrumentalities to directly infringe one or more claims of the Asserted Patent in violation of 35 U.S.C. § 271(b).

63. Google was informed in 2010 of the pending application that became the '339 Patent and had actual knowledge of the applicability of the inventions claimed therein to video codecs such as those used in the Accused Instrumentalities.

64. Furthermore, Google has been provided actual notice of the existence of the '339 Patent.

65. The Post-It notes are unequivocal evidence of Google's knowledge of the '339 Patent and infringement by Defendants.

66. In spite of having received such notice, Google and its Defendant subsidiaries have intended, and continue to intend, to induce patent infringement by customers and end users, and have had knowledge that the inducing acts would cause infringement or, alternatively, have been willfully blind to the possibility that its inducing acts would cause infringement.

67. The Accused Instrumentalities comprise the systems claimed in one or more claims of the '339 Patent, and, when used as described in Defendants' technical publications, perform the method(s) described and claimed in the Asserted Patent.

68. Defendants have engaged in indirect infringement by providing their customers and end users with the infringing Accused Instrumentalities, and/or by providing the Accused Instrumentalities and providing instructions to enable those customers and end users to use the Accused Instrumentalities, each of which constitute the system claimed in one or more claims of the '339 Patent, and/or to utilize the Accused Instrumentalities so as to practice the method claimed in one or more claims of the '339 Patent.

69. By way of example, and not as a limitation, Defendants induce such infringement by at least making its Internet websites available to customers and end users and providing links and/or other directions on its websites and/or the Internet to instruct and teach users to use the Accused Instrumentalities in an infringing manner.

70. Defendants engaged – and continue to engage – in such activities knowingly, and, as early as 2010, have done so with the knowledge that such activities induce customers and end users to directly infringe the Asserted Patent.

71. In addition, or, in the alternative, Defendants engaged – and continue to engage – in such activities knowingly, and, as early as 2010, have sold or distributed the Accused Instrumentalities knowing that such Accused Instrumentalities are especially made or adapted for use by their customers and end users in an infringing use of one or more claims of the Accused Instrumentalities.

72. On information and belief, Defendants' customers and end users configure the Accused Instrumentalities to encode and/or decode digital video as described and claimed in the Asserted Patent. Thus, Defendants' customers and end users, by using the Accused Instrumentalities, directly infringe the claimed method(s) of the Asserted Patent.

73. VSL has been damaged by Defendants' infringing activities and will be irreparably harmed unless those infringing activities are preliminarily and permanently enjoined by this Court.

74. Google and its Defendant subsidiaries either had actual knowledge of the '339 Patent or recklessly disregarded the existence of the '339 Patent, so VSL is entitled to damages against Google for indirect infringement for the period prior to the filing of this Complaint through the date of trial.

75. Defendants' infringement of the '339 Patent is and has been willful.

76. Defendants' past and continued infringement of the '339 Patent has caused VSL damage and will continue to cause irreparable damage to VSL unless Google is enjoined by this Court.

77. VSL does not have an adequate remedy at law.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiffs VSL and Max Sound request the following relief:

(a) A judgment in favor of VSL and Max Sound that Defendants have directly infringed, and/or have indirectly infringed by way of inducement, one or more claims of the Asserted Patent and that such infringement has been willful;

(b) A judgment that VSL and Max Sound have been irreparably harmed by the Defendants' infringing activities and are likely to continue to be irreparably harmed by Google's continued infringement;

(c) Imposition of preliminary and permanent injunctions prohibiting Defendants and their officers, agents, servants, employees, and those persons in active concert or participation with any of them, as well as all successors or assignees of the interests or assets related to the Accused Instrumentalities, from further infringement, direct and indirect, of the Asserted Patent;

(d) A judgment and order requiring Defendants to pay VSL and Max Sound damages adequate to compensate for infringement under 35 U.S.C. § 284, which damages may include lost profits but in no event shall be less than a reasonable royalty for the use made of the inventions of the Asserted Patent, including pre- and post-judgment interest and costs, including expenses and disbursements;

(e) A judgment awarding treble damages to VSL and Max Sound pursuant to 35 U.S.C. § 284, in view of the willful and deliberate nature of the infringement, with interest;

  (f)  A judgment declaring this to be an exceptional case under 35 U.S.C. § 285 and awarding VSL and Max Sound their attorneys' fees;

  (g)  Pre- and post-judgment interest as permitted by law; and

  (h)  Any and all such further necessary or proper relief as this Court may deem just.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, VSL and Max Sound hereby demand a trial by jury of all issues so triable.

Dated:  August 9, 2014 **GRANT & EISENHOFER P.A.**

By: /s/ Geoffrey C. Jarvis
    Geoffrey C. Jarvis

| | |
|---|---|
| Christopher M. Joe | Geoffrey C. Jarvis |
| (*pro hac vice* to be submitted) | Justin K. Victor |
| Brian A. Carpenter | **GRANT & EISENHOFER P.A.** |
| (*pro hac vice* to be submitted) | 123 Justison Street |
| Eric W. Buether | Wilmington, Delaware  19801 |
| (*pro hac vice* to be submitted) | Tel:  (302) 622-7000 |
| Mark D. Perantie | Fax:  (302) 622-7100 |
| (*pro hac vice* to be submitted) | gjarvis@gelaw.com |
| **BUETHER JOE & CARPENTER, LLC** | jvictor@gelaw.com |
| 1700 Pacific Avenue, Suite 4750 | |
| Dallas, Texas  75201 | Jay W. Eisenhofer |
| Tel:  (214) 466-1272 | Deborah A. Elman |
| Fax:  (214) 635-1828 | (*pro hac vice* to be submitted) |
| Chris.Joe@BJCIPlaw.com | **GRANT & EISENHOFER P.A.** |
| Eric.Buether@BJCIPlaw.com | 485 Lexington Avenue |
| Brian.Carpenter@BJCIPlaw.com | New York, New York  10017 |
| Mark.Perantie@BJCIPlaw.com | Tel:  (646) 722-8500 |
| | Fax:  (646) 722-8501 |
| | jeisenhofer@gelaw.com |
| | delman@gelaw.com |
| | |
| | Adam J. Levitt |
| | (*pro hac vice* to be submitted) |
| | Catherine Ó Súilleabháin |
| | (*pro hac vice* to be submitted) |
| | **GRANT & EISENHOFER P.A.** |
| | 30 North LaSalle Street |
| | Suite 1200 |
| | Chicago, Illinois  60602 |
| | Tel:  (312) 214-0000 |
| | Fax:  (312) 214-0001 |
| | alevitt@gelaw.com |
| | cosuilleabhain@gelaw.com |
| | |
| | *Attorneys for Plaintiffs* |
| | *Vedanti Systems Limited and* |
| | *Max Sound Corporation* |